UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 11-CV-3221 (JFB)(ARL)
_____

EXECUTOR OF THE NEW YORK ESTATE OF CELIA KATES, PHILIP BARASH,
BENEFICIARY OF THE IRVING G. KATES NEW YORK TRUST, ET AL.,

Plaintiffs,

VERSUS

PRESSLEY & PRESSLEY, P.A. AND JAMES G. PRESSLEY, JR.,

Defendants.

_____

**MEMORANDUM AND ORDER**
February 7, 2013
_____

Joseph F. Bianco, District Judge:

The issues presently before this Court are whether plaintiffs should be enjoined from filing any further actions in this Court arising out of the management and administration of the Irving G. Kates Trust, and whether defendants should be awarded attorneys' fees and costs for defending against this frivolous lawsuit.

Plaintiffs Philip Barash ("P. Barash"), as Executor of the New York Estate of Celia Kates, and Sandra Barash ("S. Barash"), as Beneficiary of the Irving G. Kates New York Trust, proceeding *pro se*, brought the above-captioned action against defendants Pressley & Pressley, P.A. and James G. Pressley, Jr. ("Pressley") (collectively, the "defendants"), alleging a violation of New York Judiciary Law § 487 and seeking treble damages for actions that took place in the Florida Probate Court.

By letter dated August 15, 2011, defendants moved for a *sua sponte* order dismissing plaintiffs' complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants also sought an injunction prohibiting plaintiffs from filing any further actions in the United States District Court for the Eastern District of New York arising out of the management and administration of the Irving G. Kates Trust, and for attorneys' fees and costs.

As noted in the Court's March 22, 2012 Memorandum and Order, plaintiffs are no strangers to this Court. In fact, this is P. Barash's fourth attempt to litigate claims arising from the management and

1

administration of the Irving G. Kates Trust in this Court. *See Barash v. N. Trust Corp.*, *et al.*, 07-CV-5208 (JFB)(ARL); *Trustee N. Trust Bank of Florida, N.A. v. Estate of Celia Kates, by its Ex'r Philip Barash and Sandra Barash, et al.*, 04-CV-5295 (DRH); *Ex'r, Estate of Celia Kates, Philip Barash, et al. v. N. Trust Bank, N.A.*, 04-CV-5153 (DRH). Two of the previous cases were dismissed for lack of subject matter jurisdiction pursuant to the probate exception to federal diversity jurisdiction. *See* Mem. of Decision and Order, *Ex'r, Estate of Celia Kates, Philip Barash, et al. v. N. Trust Bank, N.A.*, No. 04-CV-5153 (DRH) (E.D.N.Y. Nov. 17, 2005), ECF. No. 47; *Barash v. N. Trust Corp.*, 07-CV-5208 (JFB)(ARL), 2009 WL 605182, (E.D.N.Y. Mar. 6, 2009). Judgment was entered on May 7, 2009 in the 2007 case, and plaintiff has not appealed that decision. The third case, 04-CV-5295 (DRH), was removed by P. Barash and S. Barash to this Court from the Probate Division of the Palm Beach County, Florida Circuit Court. Judge Hurley remanded that case to the Florida court because, *inter alia*, the federal court lacked subject matter jurisdiction pursuant to the probate exception. *See* Order, dated March 29, 2005, *Trustee N. Trust Bank of Florida, N.A. v. Estate of Celia Kates, by its Ex'r Philip Barash and Sandra Barash, et al.*, 04-CV-5295 (DRH), (E.D.N.Y Mar. 29, 2005), ECF. No. 22.

In an abundance of caution, this Court issued an Order, dated October 6, 2011, which, among other requisites, required plaintiffs to show cause as to why the Court had subject matter jurisdiction to adjudicate their claims and why their claims should not be deemed barred by the doctrine of *res judicata*. *See* Order, dated October 6, 2011, *Ex'r of Estate of Celia Kates, Philip Barash, et al. v. Pressley, et al.* 11-CV-3221 (JFB)(ARL) (E.D.N.Y. Oct. 6, 2011), ECF. No. 14. The parties fully briefed these and other issues. In its March 22, 2012 Memorandum and Order, the Court granted defendants' motion to dismiss in its entirety. *Ex'r of the N.Y. Estate of Celia Kates, Philip Barash, et al. v. Pressley et al.* No. 11-CV-3221 (JFB)(ARL), 2012 WL 976067 (E.D.N.Y. Mar. 22, 2012). In particular, the Court concluded that it lacked subject matter jurisdiction over this case under (1) the probate exception to diversity jurisdiction, and (2) the *Rooker-Feldman* doctrine. *Id.* at *8-10. The Court held, in the alternative, that the claims warranted dismissal under the doctrines of *res judicata* and collateral estoppel. *Id.* at *11-13. In addition, the Court determined that the claim under Section 487 of the Judiciary Law was barred by the statute of limitations, and further, was not a plausible claim. *Id.* at *14.

Although defendants raised the issue of sanctions (including a litigation injunction) in their August 15, 2011 letter motion, (Defs.' Letter of Aug. 15, 2011 at 1, 4), the Court determined that it must give plaintiffs a full opportunity to be heard before imposing any sanctions. Therefore, an Order to Show Cause was issued on April 30, 2012 to plaintiffs, affording them an opportunity to be heard as to why the requested sanctions (including a litigation injunction) should not be granted. *See* Order, dated April 30, 2012, *Ex'r of the N.Y. Estate of Celia Kates, Philip Barash, et al. v. Pressley, et al.* 11-CV-3221 (JFB)(ARL) (E.D.N.Y. Apr. 30, 2012), ECF. No. 26. In turn, plaintiffs filed their "Motion to Obtain Relief from the Judgment of this Court dated March 22, 2012 pursuant to Federal Rules of Civil Procedure Rule 60. Motion for Summary Judgment This Motion Shall Serve in order to Economize the Court's Time, to Show Cause Why Sanctions Should Not Be Imposed" (hereinafter "plaintiffs' motion"). (Pls.' Mot. to Obtain

Relief and/or for Summ. J ("Pls.' Mot.").) Succinctly put, plaintiffs' response to the Order to Show Cause is yet another attempt to re-litigate claims concerning the alleged mismanagement of the Irving G. Kates Trust.

For the reasons set forth herein, defendants' motion for an injunction is granted, but the motion for attorneys' fees and costs is denied. Plaintiffs' cross-motions are denied as frivolous.

### I. BACKGROUND

The facts and procedural history underlying this action are set out in the Court's March 22, 2012 Opinion, *Ex'r of N.Y. Estate of Celia Kates, Philip Barash, et al. v. Pressley & Pressley, P.A. & James G. Pressley, Jr.*, No. 11-CV-3221 (JFB)(ARL), 2012 WL 976067 (E.D.N.Y. Mar. 22, 2012), familiarity with which is assumed. The Court will only recount the factual and procedural backgrounds necessary to place the current issues in context.

In their response to the Court's Order to Show Cause, plaintiffs move the Court to (1) re-review plaintiffs' complaint, exhibits, and all of their prior claims and filings because "[plaintiffs] do not believe that the rush to dismissal of this case is equitable," (Pls.' Mot. at 28);[1] (2) "set an injunction if it so wishes," (*id.*); (3) deny the issuance of sanctions against plaintiffs, (*id.* at 29); (4) grant attorneys' fees to plaintiffs "minus the punitive damage amount for violation of the American rule and because the Florida Court had no jurisdiction to assess them and because there was no trustee agreement allowing trustee attorney fees to be taken from the trust," (*id.*); (5) revise its March Order such that the Court finds "in favor of the Plaintiffs for the base amount of the attorney fees removed, $388,000," (*id.*); (6) consider its prior filings as proper for summary judgment, (*id.* 29-30); and (7) consider several claims already raised in the prior litigations concerning defendant's alleged fraudulent conduct, (*id.* at 29), and other courts' judgments, (*id.* at 30-32).

Defendants, in response, submitted a letter arguing that plaintiffs not only failed to respond to the Court's directive to show cause as to why sanctions (in the form of an injunction or the payment of attorneys' fees and costs) should not be issued against them, but they went one "audaci[ous]" step further by moving for summary judgment in an action that has already been dismissed, and by seeking $388,000 in "untrebled" damages against Pressley. (Defs.' Letter of July 2, 2012 at 2.) Based on plaintiffs' failure to respond to the Court's direct order, along with their failure to abide by two prior judges' orders instructing them against commencing additional actions against Northern Trust, defendants assert that (1) sanctions against plaintiffs are warranted, and (2) defendant James Pressley should be reimbursed for his attorneys' fees. (*Id.*)

Plaintiffs replied on July 16, 2012. Raising many of their previously articulated positions, plaintiffs challenge each and every one of the Court's prior rulings in its March Order. (*See* Pls.' Reply at 7-28.)[2] Specifically, plaintiffs argue, *inter alia*, that (1) the probate exception does not apply, (*id.* at 9-10); (2) Section 487 is applicable, (*id.* at 10); (3) dismissal is not warranted on grounds of either collateral estoppel or res judicata, (*id.* at 10-14, 17); and (4) no grounds support the issuance of either an

---

[1] Plaintiffs did not insert page numbers into their motion. Thus, all page numbers refer to those assigned by the ECF docketing system.

[2] Plaintiffs did not insert page numbers into their reply. Thus, all page numbers refer to those assigned by the ECF docketing system.

injunction or sanctions against plaintiffs, (*id.* at 18).

Additionally, the Court has received several supplemental submissions from the parties with respect to their positions on the appropriateness of sanctions. As part of those submissions, defendants submitted information reflecting that plaintiffs filed a motion in the Supreme Court of New York State in September 2012 – in clear violation of that court's prior filing injunction – in which plaintiffs sought to re-litigate that court's dismissal of their case in 2010. (*See* Defs.' Letter of January 2, 2013 at 1.) On December 7, 2012, Judge Diamond of the Supreme Court, Nassau County, issued an Order denying plaintiffs' application. *Ex'r of N.Y. Estate of Celia Kates, et al. v. Pressley, et al.*, Index No. 009928-10 (Sup. Ct. Nass. Cty. Dec. 7, 2012.)

## II. DISCUSSION

### A. Plaintiffs' Motions

Before addressing the principal matters at hand (*i.e.*, the grant or denial of a litigation injunction and attorneys' fees and costs), the Court briefly addresses other aspects of plaintiffs' submissions. First, to the extent plaintiffs move for summary judgment, the Court already has dismissed plaintiffs' claims under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Thus, any such motion is moot.

Second, insofar as plaintiffs' submission may be construed as a motion for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure and Local Civil Rule 6.3 for the Southern and Eastern Districts of New York ("Local Rule 6.3") (given that it directly challenges each of the March Order's holdings as to dismissal), or as a motion for relief under Rule 60(b) of the Federal Rules of Civil Procedure, the Court finds any such motion to be frivolous.

Turning first to each rule's respective standards, the standard for granting a motion for reconsideration under either Rule 59(e) of the Federal Rules of Civil Procedure or Local Rule 6.3 is "strict, and reconsideration will generally be denied." *Herschaft v. N.Y.C. Campaign Fin. Bd.*, 139 F. Supp. 2d 282, 283 (E.D.N.Y. 2001) (quoting *In re Health Mgmt. Sys. Inc. Secs. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2001)) (internal quotation marks omitted). This strictness is "to dissuade repetitive arguments on issues that have already been considered fully by the Court." *Medoy v. Warnaco Emps.' Long Term Disability Ins. Plan*, 97 CV 6612(SJ), 2006 WL 355137, at *1 (E.D.N.Y. Feb. 15, 2006). A movant may overcome this strict standard, however, by "point[ing] to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *Herschaft*, 139 F. Supp. 2d at 283 (same); *see also Black v. Diamond*, 05-0785-CV, 05-1669-CV, 163 F. App'x 58, 61 (2d Cir. 2006) ("To merit reconsideration, a movant must point to law or facts overlooked by the court in its initial ruling . . . ."). Alternatively, a movant must show "the need to correct a clear error or prevent manifest injustice." *Herschaft*, 139 F. Supp. 2d at 284 (quoting *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999)). Local Civil Rule 6.3 further instructs that a party moving for reconsideration must "set[] forth concisely the matters or controlling decisions which [the party] believes the court has overlooked."

Rule 60(b) of the Federal Rules of Civil Procedure allows a court to relieve a party

4

from an order in the event of mistake, inadvertence, excusable neglect, newly discovered evidence, fraud, or in exceptional or extraordinary circumstances. Fed. R. Civ. P. 60(b); *House v. Sec'y of Health and Human Servs.*, 688 F.2d 7, 9 (2d Cir. 1982). The Second Circuit has instructed that Rule 60(b) affords "extraordinary judicial relief", and it may only be granted "upon a showing of exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986); *accord United States v. Bank of N.Y.*, 14 F.3d 756, 759 (2d Cir. 1994).

Returning to the facts of this case, plaintiffs have not pointed to any controlling decisions or evidence that they contend this Court has overlooked. Indeed, plaintiffs' motion appears to be based on the same facts and arguments previously raised before this Court. The case law is clear: a motion for reconsideration "is not one in which a party may reargue 'those issues already considered when a party does not like the way the original motion was resolved.'" *Joseph v. Manhattan & Bronx Surface Transit Operating Auth.*, 96 Civ. 9015 (DAB), 2006 WL 721862, at *4 (S.D.N.Y. Mar. 22, 2006) (*quoting In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996)). This is exactly the situation here.

Because plaintiffs have not alleged any basis sufficient to warrant relief from the Court's March 22, 2012 Memorandum and Order under Federal Rules of Civil Procedure 59(e) or 60(b), or Local Rule 6.3, their motion to reconsider or grant relief from the Court's Order dismissing the complaint is denied.

The Court now turns to the two main issues before it: (1) whether the Court should issue a litigation injunction against plaintiffs, and (2) whether the Court should grant attorneys' fees and costs to defendants.

B.  Litigation Injunction

Plaintiffs have, on two prior occasions, expressly stated that they do not oppose issuance of an injunction against them in this action. (*See* Pls.' Mot. at 28 ("[T]he Court may set an injunction if it so wishes."); Pls.' Letter of May 3, 2012 at 1 ("Plaintiffs . . . will not oppose the motion for injunction.").) However, in their reply motion, plaintiffs – for the first time – take a different position, stating "there is no cause for either an injunction in favor of Pressly [sic] or sanctions . . . ." (Pls.' Reply at 18.) Despite their prior concessions, the Court has considered plaintiffs' opposition to the issuance of an injunction, and it concludes that such an injunction is warranted here for the reasons set forth below.

1.  Legal Standard

Where a vexatious litigant engages in a manifest abuse of the judicial process, Section 1651 of Title 28 of the United States Codes offers recourse. Specifically, it allows a court to "sanction a vexatious litigant who abuses the judicial process by enjoining him from pursuing future litigation without leave of the court." *Levine v. Landy*, 860 F. Supp. 2d 184, 193 (N.D.N.Y. 2012) (citing 28 U.S.C. § 1651); *Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241, 252 (E.D.N.Y. 2002) ("District courts, of course, have authority to enjoin a litigant from initiating vexatious actions."). A district court's power to so sanction is well-accepted, as it "is part of the federal judicial system and has an obligation to protect and preserve the sound and orderly administration of justice throughout that system." *In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984).

Stated most simply, a court considering the propriety of a litigation injunction must first consider whether the vexatious litigant "is likely to continue to abuse the judicial process and harass other parties," and from such a determination, assess whether an injunction is appropriate. *Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986). Before a court may issue such an injunction and restrict a litigant's access to the courts, several factors must be considered. *Conway*, 236 F. Supp. 2d at 252. These include "(1) the litigant's history of vexatious, harassing or duplicative lawsuits; (2) the litigant's motive; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties; and (5) whether sanctions would be adequate to protect the civil parties." *Id.* at 252 (citing *Fitzgerald v. Field*, No. 99 Civ. 3406, 1999 WL 1021568, at *5 (S.D.N.Y. Nov. 9, 1999)); *see also Landy*, 860 F. Supp. 2d at 193-94.

2. Application

The Court has carefully considered the relevant factors supporting issuance of an injunction, and it concludes that the circumstances of this case call for a restriction on plaintiffs' future federal litigation in this District.

Beginning with the first factor, plaintiffs' litigious shadow casts far over this Court and into others. As previously stated, this is plaintiffs' fourth attempt in this Court at litigating claims arising from the management and administration of the Irving G. Kates Trust. *See Barash v. N. Trust Corp., et al.*, 07-CV-5208 (JFB)(ARL); *Trustee N. Trust Bank of Florida, N.A. v. Estate of Celia Kates, by its Ex'r Philip Barash and Sandra Barash, et al.*, 04-CV-5295 (DRH); *Ex'r. Estate of Celia Kates, Philip Barash v. N. Trust Bank, N.A.*, 04-CV-5153 (DRH)(ARL). Plaintiffs also have brought nearly identical actions in New York and Florida state courts, which have sought to curb the incessant flow of plaintiffs' frivolous litigation by issuing sanctions in the form of injunctions and/or fees to prevent plaintiffs from filing future actions.[3]

---

[3] Plaintiffs brought a nearly identical action against the same defendants in New York Supreme Court, County of Nassau. In orders dated April 20, 2007, July 9, 2007, July 18, 2007, and August 1, 2007, Justice Palmieri instructed plaintiffs not to bring any further actions or proceedings against defendants or their officers, employees, or agents without the court's permission. Specifically, Justice Palmieri stated "[g]iven the petitioners' litigation history, including the fact that they began the instant proceeding notwithstanding their knowledge of the doctrine of *res judicata*, the Court finds that, unless they are enjoined, they very well may start another action after receiving this decision. . . . Accordingly, this Court directs that no further actions or proceedings may be commenced against the respondent . . . without the express written permission of this Court. . . . [P]etitioners are warned that the Court will not hesitate to impose such sanctions should future developments warrant." *Beneficiary, Irving C. Kates, et al. v. No. Trust Co.*, Index No. 001713/07 (Sup. Ct. Nass. Cty. Apr. 20, 2007).

Undeterred, plaintiffs not only brought an action against Northern Trust before this Court, *see Ex'r of N.Y. Estate of Celia Kates, et al. v. Pressley, et al.*, No. 11-CV-3221 (JFB)(ARL), 2012 WL 976067 (E.D.N.Y. Mar. 22, 2012) (dismissing plaintiffs' motion to dismiss), but they also – in complete defiance of Justice Palmieri's various orders – brought another action in New York Supreme Court, County of Nassau, *see Ex'r of N.Y. Estate of Celia Kates, et al. v. Pressley, et al.*, Index No. 009928-10 (Sup. Ct. Nass. Cty. Aug. 23, 2010). In his Order dismissing that case, Justice Diamond noted that plaintiffs' action had been brought in violation of the court's previous orders (including the Orders of Justice Palmieri, dated April 20, 2007, July 9, 2007, July 18, 2007 and August 1, 2007), and he therefore dismissed their complaint "[o]n the grounds of being improperly commenced in violation of the previously imposed filing injunction." *Id.* Justice Diamond noted that Justice Palmieri's prior order issuing the injunction had been upheld by both Justice Palmieri and the Appellate Division of the Supreme Court,

6

Thus, as to the first factor, the procedural history of this case speaks for itself: plaintiffs have filed duplicative, vexatious, and harassing lawsuits in several courts and jurisdictions.

As to the second factor, motive, plaintiffs' continuous filings of nearly identical frivolous litigations, many in direct violation of court orders, serve more, at this point, to harass the participants in this case – defendants and counsel alike – and to provide a soapbox from which plaintiffs might continue to express their same frustrations with the Irving G. Kates Trust (as they have many times before) than to submit responsible pleadings concerning potentially meritorious issues. *See generally Buell ex rel. Buell v. Bruiser Ken*, Nos. 97 CV 1131, 98 CV 421, 1999 WL 390642, at *6 (E.D.N.Y. Mar. 31, 1999) (finding as factor weighing in favor of issuance of litigation injunction the fact that plaintiff continued to file "voluminous submissions, including rambling, at times incoherent, and often irrelevant memoranda" that seemed more like harassment than "responsible pleadings"). Given other courts' repeated admonitions against plaintiffs' filing of litigation concerning the Irving G. Kates Trust – admonitions that have included both injunctions and the issuance of sanctions – this Court is hard-pressed to accept that plaintiffs here had "an objective good faith expectation of prevailing" when they filed a lawsuit raising nearly identical claims and arguments as they had filed before, with little or no success. *Id.* at *5 ("In determining whether to restrict a litigant's future access to the Federal courts, the court should consider the following factors[, including] . . . the litigant's motive in pursuing the litigation, e.g. does the litigant have an objective good faith expectation of prevailing?" (quoting *Safir*, 792 F.2d at 24) (internal quotation mark omitted)).

With respect to the third factor (*i.e.*, whether the litigant is represented by counsel), plaintiffs have represented themselves throughout the long and winding road of these related litigations. Although the plaintiffs have been proceeding *pro se*, "a court's authority to enjoin vexatious litigation extends equally over *pro se* litigants and those represented by counsel, and a court's special solicitude towards *pro se* litigants does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff[s] [are] calling to vindicate [their] rights." *Lipin v. Hunt*, 573 F. Supp. 2d 836, 845 (S.D.N.Y. 2008) (citation and internal quotation marks omitted). Thus, even though this factor would weigh against a litigation injunction, the other factors overwhelmingly outweigh this factor because it is clear that these plaintiffs, even as *pro se* litigants, are willfully abusing the judicial process.

With respect to the fourth factor, "whether the litigant has caused needless expense to other parties or has posed an

---

Second Department, on multiple occasions. Justice Diamond also acknowledged that "similar injunctions were [] ordered against the plaintiffs in the Florida Actions, together with impositions of sanctions and fees for the same brand of wastefully litigious conduct." *Id.* Justice Diamond concluded by warning that "any future violations of this injunction, previously imposed by a decision and order of this Court issued by Judge Palmieri on April 20, 2007, WILL, without issue or debate, result in sanctions against plaintiffs." *Id.*

Proving yet again that plaintiffs are not easily discouraged, plaintiffs moved seeking to vacate Justice Diamond's 2010 Order in October 2012. On December 7, 2012, Justice Diamond issued an order denying plaintiffs' request, concluding that "[p]laintiffs' motion is an attempt to reargue the same issues and facts contained in the original motion papers." *Ex'r of N.Y. Estate of Celia Kates, et al. v. Pressly, et al.*, Index No. 9928-10 (Sup. Ct. Nass. Cty. Dec. 7, 2012).

unnecessary burden on the courts and their personnel," *Safir*, 792 F.2d at 24, there is no doubt here that defendants already have lost, and will continue to lose, substantial time and resources defending against plaintiffs' frequent filings at both the state and federal level in different jurisdictions. Enjoining plaintiffs from bringing virtually identical and meritless actions against defendants will prevent defendants from suffering further harm, including (but by no means limited to) the economic costs associated with litigating a dispute.

As for the courts, an injunction here will bar plaintiffs from pursuing any further litigation in this Court arising from the management and administration of the Irving G. Kates Trust. This is not a question of preventing plaintiffs from having their day in court – they have had it, in multiple forums and jurisdictions. Plaintiffs simply are not pleased with past outcomes, and, as evidenced by this case's procedural history, their solution to such is to take their facts and legal arguments elsewhere. Plaintiffs' right to pursue a cause of action here has been respected. However, a litigant does not receive unlimited swings at bat.

Plaintiffs' ceaseless filings, including in direct contravention of court orders, undermine public confidence in the judicial system, particularly if litigants are allowed to disobey court orders with little to no repercussion. While litigants are, of course, entitled to their day in court, this does not equate to a right to intentionally seek duplicative and meritless litigation through sheer abuse of the legal process. Just as justice is not served where one is denied access to the courts, so, too, may it be hindered if a party cannot protect itself from litigation that has traversed into the realm of harassment for harassment's sake. *See Malley v. N.Y.C. Bd. of Educ.*, 112 F.3d 69, 69 (2d Cir. 1997) (affirming district court's issuance of injunction where plaintiff had repeatedly filed repetitive actions, including in the face of court warnings, in different jurisdictions and forums, and finding as dispositive the fact that plaintiff "has amply demonstrated that neither the lack of success of his actions nor the warnings of the district court will cause him to cease his abuse of the judicial process"); *Hoffenberg v. Hoffman & Pollok*, 288 F. Supp. 2d 527, 539 (S.D.N.Y. 2003) (citing cases and stating that "[c]ourts have recognized the need to impose severe limitations on the opportunity of litigious individuals to pursue their vexatious and frivolous claims"). For these reasons, plaintiffs' repeat filings, often in defiance of court orders, impose a burden not only on defendants, but also on the courts. Thus, the fourth factor weighs in favor of the issuance of an injunction. *Hoffenberg*, 288 F. Supp. at 539 ("The court's power to enjoin [litigious] individuals is used to protect judicial resources, the finality of judgment and the integrity of the courts from those plaintiffs who abuse the court system and harass their opponents.").

Turning to the fifth and final consideration, "whether other sanctions would be adequate to protect the courts and other parties," *Safir*, 792 F.2d at 24, the Court concludes that an award of monetary damages would not repair the underlying harm associated with plaintiffs' aggressive, incessant, and – given the frequency and repetitiveness of plaintiffs' claims – frivolous litigation. Stated differently, awarding monetary damages here would be insufficient to address the heart of this problematic situation – while it might serve to ameliorate some damage (assuming defendants were able to collect on such an award), it cannot rectify the overall harm

already caused, nor will it effectively shield defendants from future harm.

Having carefully considered those factors set forth by the Second Circuit in *Safir*, 792 F.2d at 24, this Court concludes that plaintiffs here are "likely to continue to abuse the judicial process and harass other parties." *Id.* For this reason, the Court holds that injunctive relief is both necessary and appropriate to shield defendants from being forced to re-litigate a case that plaintiffs may try to again resurrect in this District. *See generally In re Martin-Trigona*, 737 F.2d at 1261 (upholding issuance of injunction where plaintiff "abuse[d] the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive . . . proceedings" (quoting *In re Hartford Textile Corp.*, 659 F.2d 299, 305 (2d Cir. 1981)) (no quotation marks)); *Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 202 F. Supp. 2d 126, 142 (S.D.N.Y. 2002) ("A district court has the authority to enjoin a plaintiff who engages in a pattern of vexatious litigation from continuing to do so.").

The granted injunction shall apply to the United States District Court for the Eastern District of New York, allowing it to summarily dismiss lawsuits brought by plaintiffs where such suits are either filed in or removed to federal court, and either relate to or arise from issues concerning the management or administration of the Irving G. Kates New York Trust. In seeking leave to file, plaintiffs must certify that any claim(s) they wish to bring are new, *i.e.*, have never been raised and/or disposed of on the merits by any court. Additionally, plaintiffs must certify that any such claim(s) are not frivolous, malicious, or taken in bad faith, and they must expressly cite or affix a copy of this Opinion and Order to any such motion. A failure to comply with these requirements will constitute sufficient grounds for summarily denying leave to file. No party need file a response to any documents or motions served by plaintiffs until leave from the Court, as so described, is obtained.

Plaintiffs are warned that should they ignore the Court's order and begin another series of lawsuits, this injunction may be broadened to include all federal district courts. Stated differently, if their frivolous filings continue, plaintiffs may be permanently barred from pursuing this same litigation in any district court throughout the nation. *See Malley*, 112 F.3d at 69 (noting that where appellant had filed another repetitious action in the Eastern District of New York after being barred from filing future complaints in the Southern District of New York, "broaden[ing] the injunction beyond the Southern District to all federal courts" was appropriate "in light of the warnings previously issued to [appellant] and [ ] his persistence in pursuing the same meritless claims wherever his papers are accepted by a clerk of court," and remanding to district court to so broaden the injunction); *Sassower v. Abrams*, 833 F. Supp. 253, 270 (S.D.N.Y. 1993) (granting injunction permanently barring plaintiff from filing any action in any federal district court because plaintiff had "clearly demonstrated . . . that, when an injunction is limited to one federal district or circuit court, [plaintiff] simply institutes an identical lawsuit in another federal forum," and thus, such a broad injunction was the only "sanction which would be adequate to protect the defendants and the courts"). Moreover, although the Court is not also awarding attorneys' fees or costs to the defendants in this case (for the reasons discussed below), such attorneys' fees and costs can be awarded in future actions if defendants are required to expend any

additional money in response to another vexatious lawsuit or motion filed by plaintiffs in this District.

### C. Attorneys' Fees and Costs

Having concluded that the issuance of an injunction is warranted in this case, the Court declines to award attorneys' fees and costs to defendants. Generally, "litigants are required to bear their own attorneys' fees unless otherwise provided by contract or statute." *Five And One, Inc. v. Pine Tavern, Inc.*, No. 00 Civ.4556 LAK, 2003 WL 21357123, at *2 (S.D.N.Y. June 12, 2003). Here, there is no contract or statute at issue. The Court has carefully considered defendants' position that attorneys' fees and costs, as an additional form of sanction, are also necessary on account of plaintiffs' intentional repeat filings of a frivolous action. However, the Court concludes in its discretion (based upon its judicial supervision of this litigation) that the granting of the litigation injunction here – with the possibility of issuing an even broader one, should plaintiffs choose to ignore it – will serve as both the greater remedy for defendants' harm, and the greater deterrence against plaintiffs' abuse of the judicial process. It therefore finds the additional monetary sanction to be unwarranted.

In connection with the exercise of its discretion, the Court also notes that, although defendants did file papers in connection with the dismissal of this case, the Court did not require a formal motion to dismiss from defendants. Rather, it sought to address this issue *sua sponte*, after giving plaintiffs an opportunity to show cause as to why the case should not dismissed. *See* Order, dated October 6, 2011, *Ex'r of N.Y. Estate of Celia Kates, Philip Barash, et al. v. Pressley, et al.*, No. 11-CV-3221 (JFB)(ARL) (E.D.N.Y. Oct. 6, 2011), ECF. No. 14. It was defendants who requested an opportunity to respond to plaintiffs' submissions. (*See* Defs.' Letter of Oct. 27, 2011 at 1-2.) In other words, the Court sought to use its authority to dismiss the frivolous case *sua sponte* to avoid unnecessary litigation costs to defendants. Additionally, according to various documents submitted to this Court, monetary sanctions were awarded against plaintiffs in the Florida action. Thus, the monetary sanctions previously awarded against these plaintiffs, along with this Court's litigation injunction, and the possibility of a nationwide federal litigation injunction and/or monetary sanctions should such vexatious litigation continue, are sufficient sanctions under the circumstances of this case; the Court sees no need to impose monetary sanctions in this particular case. *See Poll v. Paulson*, No. 1:06-CV-144 TC, 2008 WL 118076, at *5 (D. Utah Jan. 8, 2008) ("Those [prior] monetary sanctions coupled with an injunction entered by this court restricting future filings should provide sufficient motivation for [plaintiff] to not engage in litigation abuse."); *see also Lipin*, 573 F. Supp. 2d at 846 ("While the Court is sensitive to the cost that [plaintiff] has imposed on defendants, the principal objective of the imposition of Rule 11 sanctions is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses . . . Because [plaintiff's] abusive conduct will be completely deterred by injunctive relief, an additional award of attorneys' fees is not warranted."); *Brady v. Marks*, 7 F. Supp. 2d 247, 256 (W.D.N.Y. June 22, 1998) ("Since my order enjoining plaintiff from filing further actions relating to his Family Court proceedings without prior leave of court should effectively prevent plaintiff from continuing to pursue such baseless claims in this court, additional

10

sanctions, at this time, such as a monetary penalty, should not be necessary.").

In short, because the injunction here will serve as a sufficient sanction under the circumstances of this case for defendants' harm, the Court denies defendants' motion for attorneys' fees and costs.[4]

### III. CONCLUSION

For the reasons stated herein, plaintiffs' motion is denied in its entirety. Defendants' motion for attorneys' fees and costs is denied. Defendants' motion for a litigation injunction is granted. A separate document will be issued by the Court setting forth the terms of the litigation injunction. Nothing in the injunction shall be construed as having any effect on plaintiffs' ability to file an appeal before the United States Court of Appeals for the Second Circuit, or to bring a lawsuit in this District unrelated to the subject matter of this litigation – namely, plaintiffs may bring lawsuits unrelated to the management and administration of the Irving G Kates Trust.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 7, 2013
       Central Islip, NY

\* \* \*

Plaintiffs are proceeding *pro se*: Executor of the New York Estate of Celia Kates, Philip Barash, 6 Serenite Lane, Muttontown, New York 11791; Beneficiary of the Irving G. Kates New York Trust, Sandra Barash, 6 Serenite Lane, Muttontown, New York 11791. The attorneys for defendants are Marian C. Rice, L'Abbate, Balkan, Colavita & Contini LLP, 1050 Franklin Avenue, Garden City, NY 11530, and Candice Brook Ratner of L'Abbate, Balkan, Colavita & Contini LLP, 1001 Franklin Avenue, Garden City, New York 11530.

---

[4] Plaintiffs' request for sanctions in the form of attorneys' fees is, of course, frivolous. In light of plaintiffs' continued meritless, harassing filings in direct violation of various court orders, there are no grounds supporting the award of attorneys' fees to plaintiffs. Accordingly, the Court denies plaintiffs' request for attorneys' fees. (Pls.' Mot. to Obtain Relief and/or for Summ. J. at 29.)